May it please the Court, Judge Brezon, I'd like to reserve five minutes for rebuttal, if I may. That's fine. In the district court, the appellant sought a declaratory judgment that it could not be compelled to arbitrate pursuant to Municipal Securities Rulemaking Board Rule G35. Because we are here on the merits of that controversy, with a happy convergence of unambiguous statutory language, congressional intent, and judicial precedent, I will only take a few minutes to discuss the merits of the controversy respecting whether or not a party who has not agreed to arbitrate and is not a bank dealer can be compelled to arbitrate pursuant to MSRB Rule G35. If I could have a minute. My understanding is that your client is not a member of this organization. That is correct. So the authority of this organization to compel you to arbitrate is a statutory authority? Not you, but anyone to arbitrate who isn't a member of it. It's statutory. It derives from Section 15B of the Securities Exchange Act of 1934, which grants the Municipal Securities Rulemaking Board the authority to compel a party to arbitrate. So just as a background noise, therefore, it seems to me that the usual — that the FAA doesn't apply because it's not contractual and that the usual presumptions in favor of arbitration, I don't know if they apply. But it's a new world from what we usually do in arbitration. That's correct. Here the sole authority to compel a bank to arbitrate arrives under — Well, not necessarily.  A bank could be a member. That is correct. Okay. But if they're not a member, then it comes from the statute, and then we have to apply some rule interpreting the statute. And I thought it was probably MSRB Rule G1, but you said 35. Why is it not G1? Well, G1 is the definition, definitional statute, which itself comes under the Securities Exchange Act of 1935. And that is the definition that applies under Section 3A30 of the Securities Exchange Act, which says that if a bank engages in the business of buying and selling securities solely through a separate identifiable department, only that separately identifiable department will be deemed a bank dealer. And then the MSRB rules that compel arbitration only apply against a bank dealer. But then G1 talks about what the activities are that make someone a municipal securities dealer. And one of them is financial advisory and consultant services for issuers in connection with the issuance of the municipal securities. And then there's one processing and clearing activities. That's correct, Judge Friedman. Can you explain why you're not those things, not doing those things? It is alleged that our client did those things. But whether or not the bank did those things, unless they did them in the separately identifiable department that engages in buying and selling securities, they are not subject to MSRB Rule G1. If you look at the rule, it says that a separately identifiable department or division of the bank is that unit of the bank which conducts all of the activities of the bank relating to the conduct of business as municipal securities. And then it describes what those activities might be. But the rule that compels arbitration only applies to a bank dealer, which is a municipal securities dealer pursuant to Rule G1, not to a municipal securities advisor. And it only applies in the event the separately identifiable department is conducting these activities. All right. Just a minute. You said G1 was or G2 was definitional. It says G1 is definitional. G1 or G2? GA little 1 or GA little 2? GA little 1 talks about a separately identifiable department, which relates to the conduct of business of a municipal securities dealer as such activities are defined, and the activities are defined in sub 2. And those activities are certainly broader than what you're suggesting. So let me see if I can — is your argument essentially this, that you haven't really been talking about the statutory language, which the own account language, but you talked about that a lot in your brief? So does that matter? I'm sorry. Her brief talks a great deal about the fact that to be, as I understand it, to be a municipal securities dealer and therefore to be a bank dealer, you have to be buying or selling in your own account. Yes. Rule D8 defines a bank dealer as a municipal securities dealer, which is a bank, could be a bank, or a separately identifiable department of a bank as defined in G1. Okay. So we go — But what is a municipal securities dealer? Pardon? What is a municipal securities dealer? What is the definition of a municipal securities dealer? A municipal securities dealer is an entity that is engaging in buying and selling securities solely for its own account. That's not in G1, is it? Where are you getting that part? That definition is in the Securities Exchange Act of 1934 in Section 3A30. But doesn't it say something about unless there's a context that otherwise specifically requires? But there is no — That's in Rule D1, which is the incorporation provision, right? Yes, that's right. Unless the context otherwise specifically requires, the terms used in the rules shall have the respective meaning set forth in the Securities Exchange Act. That's the general definition of all — I mean, that's the general rule applying to all definitions in the Section 3A of the Securities Exchange Act. That section specifically provides, provided, however, that no person other than a municipal securities broker, municipal securities dealer, municipal advisor, or associated person may be compelled to submit to arbitration except as provided in the section of the Federal Securities Act. If you look then to the definition, the definition of a municipal securities dealer is one who buys and sells securities solely for his own account. Okay, say we don't agree with you. Say we think this part of D1 that says unless context requires otherwise. Let's put aside this buying and selling for your own account thing. And tell me if you can win some other way than that. It's not possible under the scheme of the Securities Act to set aside the difference between one who buys and sells for his own account and one who buys and sells for the account of third parties. So if we disagree with you — The whole scheme is based on that dichotomy. Okay, so if we disagree with you, you lose. You're not going to argue about these weren't customers or some other thing. You just want us to rest on that. Today at this hearing, I'm solely addressing this issue of the fact that the bank had a separately identifiable department, which was the only department of the bank that bought and sold securities for its own account. And therefore — First of all, it seems odd to abandon an argument that you made at some length in your brief. But second of all, are you abandoning it or you're just not telling us about it today? It's just because of the time limit, honestly, Your Honor. And secondly — But so if we — so if we disagree with you, then you don't want us — you're giving up this customer idea. No, I'm not giving it up. I'm asking you to take it on the merits discussed in the briefing due to the allocation of time. All right. Secondly, on your theory of how these pieces fit together, what is the function of G.A. sub 2? Of which rule, Your Honor? G.A. sub 2. G.A. sub 2. G.A. sub 2. I think it's G1A sub 2. Right. I think. Rule G1. What is the function of Rule G1 and its definition of municipal securities dealer? Because it defines only those activities of a municipal securities dealer that are subject to the rules of arbitration. In other words, you have to be a bank dealer. Because you have to be a bank dealer, you have to be a municipal securities dealer. And in order to be subject to G35 compelling you to arbitrate, you have to engage in one of those activities. In other words, it's not a definition of what is a municipal securities dealer. It is a definition of if you are a municipal securities dealer, when do you have to arbitrate? That's correct. And that's exactly the. . . Is that a definition? That's by definition. And that's the error, frankly, that the district court made. The district court jumped from the fact that there was an allegation that the bank engaged in these activities to the conclusion that the whole bank was there for a municipal securities dealer and subject to arbitration. But if you look at. . . I don't see. . . That doesn't seem to me to be the jump at all. I mean, in other words, the hard question here is, is G1A2 a definition of what is a municipal securities dealer or is it something else? It is a definition of what those activities are. The definition of the activity is of somebody who was first a municipal securities dealer. That is correct. That is correct, Your Honor. It's exactly. . . That's exactly how it works. So in order to be subject to G35, which is the provision that compels arbitration, you have to be a municipal securities dealer. You have to engage. . . That municipal securities dealer has to engage in municipal securities activities. And it has to engage them, in the third point. And that's because. . . In its capacity as a municipal securities dealer. Because rule. . . And then Rule G35 does use the phrase in connection with municipal securities activities of the bank dealer. So the bank dealer. . . That's correct, Your Honor. So you have to be a municipal securities dealer. You have to engage in municipal securities activities of that municipal securities dealer. And the municipal securities dealer has to be engaged in its capacity as a municipal securities dealer. And the reason that this language, which I believe is unambiguous and clear, is important, is because it affects the entire regulatory scheme that divides as a supervision of the basic buying and selling of securities. That's the 33 Act and the 34 Act from the banking business. As pointed out in the American Bankers Association v. SEC case, which we have cited to you, it is clear that Congress intended that there be such a difference between the regulation of banks and the ordinary regulation. . . Would they then have to arbitrate with regard to a bunch of other things that aren't buying or selling on their own account? That's the whole point. They can only be compelled to. . . There only can be. . . They permitted the Securities and Exchange Commission regulatory scheme to invade the regulation of banks only in a very narrow circumstance. That very narrow circumstance is when the bank or a separately identifiable department of the bank is acting as a municipal securities dealer. That means buying and selling. . . In which case they can then regulate a lot more than being a municipal securities dealer. Excuse me? In which case they can then regulate more than being a municipal. Well, they can. . . That's the disconnect that I don't understand. I'm not understanding the question, Your Honor. You don't seem to understand any of my questions. But the rule sublittle 2 has a bunch of activities that don't involve buying and selling on one's own account, right? Such as underwriting, financial advisory and consultant service, research and investment advice, et cetera. Yes, but the follow-on provision says that all of those other things only are municipal securities activities if they pertain to the matters that are set forth in A and B, which are the basic underwriting, trading, and selling of municipal securities. Financial advisory and consultant services, which you would say is not, does not make you a municipal securities dealer. Not a dealer. That's because an advisor is separately defined. Okay, fine. All right, thank you. Your time is up. You haven't used up more than your time. We'll give you a minute of rebuttal. Thank you. Thank you, Your Honor. May it please the Court, I'm Thomas Bradley on behalf of the Estes Group. I'd like to begin by explaining how the MSRB rules work. Rule 35 is the one that says that every bank dealer shall be subject to the code of the National Association of Securities Dealers, then known as NASD, it's now FINRA. And the reason they did that is that there were so few arbitration cases before MSRB that decided to disband their own arbitration process, and so that's why they use FINRA. So it doesn't matter that the bank is not a member of FINRA. It's by their own MSRB rules that require them to submit the matter to this FINRA. But only if they're under this category of municipal securities dealer, right? That's correct. And I'd like to cite the Court to Rule D-8, and it says the term bank dealer shall mean a municipal securities dealer, which is a bank, as defined in Rule G-1. So G-1 does define who a municipal securities dealer is. The Bank of Oklahoma relied on it. Well, wait a minute, wait a minute. This is the antecedent grammar rule, right? It says it's a bank or it's a municipal securities dealer, which is a bank, or a separately identifiable department or division of a bank as defined in Rule G-1. And Rule G-1 does define what is a separately identifiable department or division of a bank. A separate as such term is used in the Act as the unit of the bank. So my reading of that is not — G-1 doesn't define what's a bank. G-1 defines what's a separately identifiable department or division of a bank. And G-1, grammatically, it doesn't mean that the definition of this municipal securities dealer is in G-1. It says it's a bank or a separately identifiable department of the bank. So I don't think the definition reference or can you tell me how the definition reference refers to the municipal securities dealer as opposed to the separately identifiable department or division of a bank? There's two separate issues. One is whether or not the bank as a whole, Bank of Oklahoma, or whether its separately identifiable division is the appropriate defendant in these arbitration cases. Right. And that seems to me what the cross-reference to G-1 is relating to in D-8. Not what is a municipal security — I'm not sure — Not what is a municipal securities dealer. Well, first, for it to maintain its separately identifiable division or department, all of the municipal securities activities must take place within that identifiable unit. But this D-8 doesn't say anything about municipal securities activities. D-8 talks about which the municipal securities dealers, and then it talks about what actions the municipal securities dealer, whether it's the subdivision or whether it's the bank. I'm really baffled. Where does D-8 talk about that? D-8 says the term bank dealer shall mean a securities — I'm sorry — shall mean a municipal securities dealer, which is a bank or a separately identifiable department or division of a bank, as defined in Rule G-1 of the Board. So you want to take the as defined in Rule G-1 of the Board and bump it back to defining what's a municipal securities dealer rather than what's a separately identifiable department or bank. Well, you want it to be both, as I understood. G-1 defines whether it's a bank or a subdivision of the bank is defined by G-1. And G-1 lists all the different activities. Well, doesn't it do both? So I thought G-1 had little 1, which is about a separately defined department, and then G-2, which is about municipal securities dealer activities. Right. So it has both of the parts of the D-8 that you're talking about, I thought. Yes. But he's saying that that's not where we look for whether — he's saying we only look at the activities, not at whether this is how you know if it's a dealer at all, and you're saying that's wrong because of D-8. Correct. And what happened is that in 1934, Congress did have a fairly limiting definition for a bank dealer, one that trades for its own account. But in 1975, Congress authorized the creation of the MSRB and told the MSRB to supplement the shortcomings of the 1934 Act. And the goal of the MSRB — By contradicting the definition in the statute? By expanding it. So what they wanted to do was to — to promote fairness in the municipal securities field. And they also wanted to protect investors. So what it did is it classified bank dealers and municipal security dealer activities in G-1. But when the statute talks about the trading on your own account business, like where has that gone? They have expanded beyond that. And so is that appropriate? I mean, can we look at that under Chevron deference or what? I mean, where does this come from? G-1 modifies it and expands it. But how do we know the statute allows that? I mean, the statute has a limitation that seems like you're getting away from. Excuse me. The statute, and we did cite that in our brief, Congress gave MSRB the authority to classify and define municipal security dealers. And so that's what it did in G-1. But then G-1 gets rid of, it seems like you're saying, gets rid of this selling securities on their own account business, buying and selling. It broadens it greatly. Broadens away from it altogether. Right. Does it say that, though? I mean, that isn't the way it reads. It doesn't read as a definition of what's a municipal securities dealer. It reads as a definition of what the activities of a bank that is a municipal securities dealer will count. And then what's interesting is that the language of G-35 uses the term in connection with municipal securities activities of the bank dealer. So it appeals, it appears that the municipal, that what's a bank dealer and what are the municipal securities activities of the bank dealer are not necessarily the same thing. I think you have to get that. But you're arguing that they are the same thing, that everything that is a municipal securities activity makes somebody a bank dealer. Correct. Rather than a bank dealer is what the statute says a bank dealer is. Correct. Okay. Say we agree with you. Which activity do you think they did here? What the district court found was that Miriam Nielsen, who was their head of the corporate trust department, she advised and consulted with regard to the term structure and timing of bond offerings. And that came directly out of the SEC investigation. But who was she advising? What's that? Who was she advising? She was advising both the underwriter and the issuer, Christopher Brogdon. And this came right out of the SEC's investigation of the Bank of Oklahoma. So do you want to address the customer question? Yes. Because the people she was advising were not the bondholders. I would like to address the customer issue. Thank you. And I'd also like you to get to the question, the irreparable harm question. I mean, frankly, I don't understand how not, you know, I guess you have the opposite problem. But to me, I don't understand how there's irreparable harm here, which I gather you would agree with, or maybe you wouldn't. I'm prepared to discuss that. I'd like to briefly explain why I believe the Estes Group were customers. Yes, please do that. First of all, the district court made that finding a fact. I don't think that the bank can show Judge Hicks was clearly erroneous. Both the SEC and MSRB rules provide that the bank owes a fiduciary duty to the bond investors as its role as a trustee, but also in its role as a dissemination agent and paying agent. But why does a fiduciary duty make someone a customer? Like usually a customer is somebody who purchases something, and they didn't purchase anything from them. They did indirectly. The BOK was compensated from the money that was held in trust by the bondholders. So a bond is purchased. The bond, I'm sorry. That could be that they're working for the issuer. That doesn't mean they're working for the bondholders. That is their claim, but it was from the revenues of the facilities that the bank was being paid, and the revenues from the facilities were held in trust for the bondholders. So it came out of the bondholders' ultimate money, because had that money not gone out to the bank to pay for trustee fees or other things, those monies would have been given to the bondholders. So it's a bank account owned by the bondholders. And is there any case that tells us that when a service fee is taken out of an account that's in trust, it means someone's a customer? No. There is not a direct contract between bondholders and the bank. They are the beneficiaries of the agreement to do their duties. And so it was the bondholders who provided the funds that paid for the BOK services, and in return for those services, BOK was required to keep track of all of the records and notify under EMA and everything else the bondholders of the status. So the bondholders were receiving the benefit from. So it seems like maybe you should have noticed that you're going to need to go to arbitration, and if there's ambiguity about whether this counts as a customer because they didn't really purchase anything, then who does the ambiguity weigh for here, weigh in favor of? I don't know what to do because we don't really have a presumption of arbitration like we usually do. In the city of Reno case, the court said that the question turned on whether the presumption applied on whether or not there was a – the question was whether or not there was the scope of arbitration or the existence of an agreement to arbitrate. Clearly, there exists an MSRB rule that requires some – But only with the customers, right? So if they thought these people aren't our customers, how do they have any idea that they're supposed to be expecting arbitration? I think because it goes back to the same customer question, and because they were providing – they had a fiduciary duty to provide services to the bondholders, then they were, in effect, customers. And I don't think there's any – The services to the bondholders were the information provided or what exactly? They did a number of things. They were the dissemination agent. They were supposed to notify the bondholders whenever there was a failure to make payments or draw on reserve funds. But that was in pursuit of an obligation from the issuers, right? For every bond issue, there's a requirement to have this bond indenture, and it's the indenture trustee that's supposed to perform these duties for the benefit of the bondholders. It's a requirement. It's a requirement on the issuers? No, it's a requirement on the Bank of Oklahoma that was the bond trustee. Well, because they're essentially – it's a derivative obligation. Yes, you could say that. Okay, so – Would you like me to discuss the – Yes, the irreparable harm. I – I understand there's case law that supports it. It seems totally inconsistent with the general rules of finality and also with where the FAA operates with regard to whether you can enjoin an arbitration or whether you have to go through it first and then contest it. I don't understand it. Why having to go through an arbitration that you don't want to go through is irreparable harm? Certainly that is what Abernathy and campaign construction hold, Your Honor. It's that permitting an arbitration to go forward is generally not appealable unless there's a final order. Judge Hicks' decision in this case was not a final order. Judge Hicks, in fact, denied our motion – But there's ultimately a final order, no? No. What he did is he denied – But if you had the arbitration – What's that? If there were an arbitration, there would ultimately be a final order. If there were an arbitration – And that's why the arbitration isn't appealable then. It's usually appealable later. There would be a motion to either confirm or to vacate the arbitration award. Correct. And ordinarily, you don't enjoin the arbitration. You go through it. Just like you go through a trial, even if you think you should have gotten summary judgment, and then you appeal. Correct. But you want to stop it now. No, they want to stop it, I think. They want to stop it. So you think there isn't irreparable harm. I totally confused you. No, I'm sorry, Your Honor. I think that Abernathy and campaign construction permit this court to dismiss the bank's appeal in this case. Because there's no irreparable harm. Because there's no irreparable harm. And you think eBay continues to allow an absolute rule like that? So, I mean, there might be an absolute rule that going through an arbitration unnecessarily is never irreparable harm. But eBay seems to draw into question blanket rules in this irreparable harm context. I would agree with the court's interpretation, but I don't think that you haven't, at least in my research, there wasn't any cases that cited to eBay and said that going through an arbitration was, in fact, irreparable harm. And all of the cases. No, no, eBay would say a district court has to make a case-by-case determination. Right. So I'm wondering here, so, I mean, I get the sides confused, too. They're saying they don't have to arbitrate. You're saying you do have to arbitrate. If we agree with them, say, that they don't have to arbitrate, then should we remand to the district court to find out whether it would irreparably harm them because it has to be case-by-case under eBay? No, I think if you agree with the bank that they shouldn't have to arbitrate, that'll put an end to it. What do you mean by that? I mean, I'm not going to go back to district court and ask for a finding. If you rule that the bank is not subject to arbitration, then we'll proceed in federal court against the bank on behalf of the Estes Group and not proceed in front of FINRA. So are you basically saying we shouldn't decide the issue because you're basically not going to take the position? You would just as soon get it over with one way or another? I'd just as soon get it over with one way or another. So this whole irreparable harm thing is really a sideshow, then? It doesn't really matter. We're going to do, whether they go to arbitration or not, it's going to be decided on the merits, not on irreparable harm. That would be my request. Okay. That makes things easier. That's helpful. Because I tend to ‑‑ I think the bank would actually agree with me for the first time in two years of litigation. All right. Thank you very much. And, sir, is there anything you want to add? In one minute. First, a quick comment about irreparable harm. Well, we've just washed it out. Let's not talk about that. Let's talk about something else. I'm sorry, Your Honor. All right. Well, so if you win, and if you win on the merits, where we think you shouldn't have to arbitrate, what do you think should happen with irreparable harm and whether we need to look at the other factors of the injunction? In the absence of an agreement, you're compelling a party to subject itself to the regulatory jurisdiction that derives from an exercise of governmental power by the Securities and Exchange Commission and a self-regulatory organization. To me, that in itself is irreparable harm. But beyond that ‑‑ But it seems like it doesn't matter because he's not going to make you judge. It doesn't matter because we've now been told that if you prevail on the merits, you're not going to have to prevail on irreparable harm. So let's go quickly to whatever you want to say about the merits. About the merits, I want to start with G1, which is the definition of a separately identifiable department, which is decided ‑‑ which is by reference to Section 3A30 of the Securities and Exchange Act of 1934. And if you go to that section of the Securities and Exchange Act, it says that if the bank is engaged in such business, that is the business of buying and selling securities for its own account, through a separately identifiable department or division, that department or division, and not the bank, shall be deemed to be the municipal securities dealer. Okay. Thank you very much. Your time is up. The case of Boak v. Estes is submitted, and we're going to take a short break and clear the courtroom because the next case has a closed courtroom. Thank you.
judges: Berzon, Friedland, Dominguez